UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

---

| | |
|---|---|
| In re: | Chapter 11 |
| | Administratively Consolidated |
| SageCrest II, LLC, | Case No. 08-50754 (Lead) |
| SageCrest Finance, LLC, | Case No. 08-50755 |
| SageCrest Holdings, Limited, | Case No. 08-50763 |
| SageCrest Dixon, Inc., | Case No. 08-50844 |
| Debtors. | |

---

| | |
|---|---|
| SageCrest II, LLC, and The Official Committee of Equity Security Holders, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 08-5097 (AHWS) |
| Topwater Exclusive Fund III, LLC, Freestone Low Volatility Partners, L.P., Freestone Low Volatility Qualified Partners, L.P., and Wood Creek Multi-Asset Fund, L.P., | |
| Claimants/Defendants. | |

---

*Appearances*:

| | | |
|---|---|---|
| Douglas J. Buncher, Esq. | : | Attorneys for Debtors/Plaintiffs |
| Patrick J. Neligan, Esq. | : | |
| Seymour Roberts, Jr., Esq. | : | |
| NELIGAN FOLEY LLP | : | |
| 325 N. St. Paul, Suite 3600 | : | |
| Dallas, TX | : | |
| | | |
| James Berman, Esq. | : | |
| ZEISLER & ZEISLER, P.C. | : | |
| 558 Clinton Avenue | : | |
| Bridgeport, CT | : | |

| | | |
|---|---|---|
| Jonathan E. Polonsky, Esq.[1] | : | Attorneys for |
| Dennis S. Meir, Esq. | : | Official Committee of |
| Paul M. Rosenblatt, Esq. | : | Equity Holders |
| KILPATRICK & STOCKTON LLP | : | |
| 1100 Peachtree Street, Suite 2800 | : | |
| Atlanta, GA | : | |
| | | |
| Eric Henzy, Esq. | : | |
| REID & RIEGE, P.C. | : | |
| 1 Financial Plaza | : | |
| Hartford, CT | : | |
| | | |
| Mark R. Jacobs, Esq. | : | Attorneys for |
| Robert M. Fleischer, Esq. | : | Claimants/Defendants |
| PRYOR CASHMAN LLP | : | |
| 410 Park Avenue | : | |
| New York, NY | : | |
| | | |
| Kim McCabe, Esq. | : | Attorneys for U.S. Trustee, |
| Steven E. Mackey, Esq. | : | Region 2 |
| Office of the U.S. Trustee | : | |
| 150 Court Street, Room 302 | : | |
| New Haven, CT | : | |

# MEMORANDUM AND ORDER
## OVERRULING PLAINTIFFS' PAROL EVIDENCE OBJECTION AND DEFERRING RULING ON PLAINTIFFS' HEARSAY AND RELEVANCE OBJECTIONS

**Alan H. W. Shiff, United States Bankruptcy Judge:**

    This adversary proceeding seeks a determination that the defendants are not redeemed investors of debtor SageCrest II and, therefore, are creditors in the debtor's bankruptcy case. The defendants have identified approximately 117 exhibits they intend to introduce into evidence to show they are redeemed investors of the debtor. The plaintiffs object to the introduction of that proposed evidence on the basis of parol

---

[1] Attorney Polonsky's address at Kilpatrick & Stockton is 31 West 52nd Street, 14th floor, New York, NY.

evidence, hearsay, and relevance grounds.  For the reasons stated herein, the plaintiffs' parol evidence objections are overruled and the ruling on the plaintiffs' hearsay and relevance objections are deferred until trial.

## BACKGROUND

SageCrest II, LLC ("SC II") is part of a group of funds that was formed to address the financial needs of companies which, due to the consolidation of the banking and specialty finance sectors, had been shut off from traditional sources of capital.  SC II and the other debtors conduct business chiefly through two lines of business: structured finance and real estate investment and development.  In their structured finance business, the debtors have made loans to borrowers primarily in the following five areas: specialty finance; life insurance-related products; corporate; mortgage/real estate products; and specialty auto finance.  For real estate investment and development, the debtors have made loans or investments in the areas of hospitality, mixed use, multi-family, and commercial.  The debtors have typically provided senior secured, asset-based loans and related products to small-sized and medium-sized businesses that have a significant asset base and are overlooked by many lenders in the mainstream capital markets.  The debtors have also provided junior or subordinated secured financing.

SC II is a Delaware limited liability company ("LLC") governed by an operating agreement, the "Amended and Restated Operating Agreement of SageCrest II, LLC," dated December 18, 2002 (hereinafter, the "Operating Agreement").  SC II is managed by Windmill Management LLC ("Windmill").  Windmill is the managing member of SC II. Each of the defendants became members of SC II via a subscription agreement that, *inter alia*, bound them to the terms of the Operating Agreement.

On August 17, 2008, SC II filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  By orders dated August 27, 2008, and October 30, 2008, the court approved the joint administration of SC II's case with that of debtors SageCrest Finance, LLC ("Finance"), SageCrest Holdings Limited ("Holdings"), and SageCrest Dixon, Inc. ("Dixon") for administrative purposes.  On October 7, 2008, the United

States Trustee ("UST") appointed a committee of equity security holders (the "Equity Committee"), including in its membership defendants Topwater Exclusive Fund III, LLC ("Topwater"), and Wood Creek Multi-Asset Fund, LP ("Wood Creek"). (*See* "Appointment of Committee of Equity Security Holders" (doc. # 149).) The UST contends that the Equity Committee is comprised of former investors in SC II with all committee members claiming they redeemed their investments in that debtor. (*See* UST's Objection at 2 (doc. #155).) Asserting they are creditors – and *not* equity holders – of SC II, both Topwater and Wood Creek resigned from the Equity Committee. (*See* "Amended Notice of Appointment of Committee of Equity Security Holders" (doc. #273) (deleting Topwater and Wood Creek from Equity Committee).)

The defendants allege they effectively notified SC II of their intentions to redeem their interests, with an effective redemption date of June 30, 2007. Therefore, they maintain they are creditors of SC II despite not receiving payment for their redeemed interests in SC II on the June 30th effective date.

SC II disagrees, asserting that the defendants continue to be members of the LLC. While SC II acknowledges receiving the defendants' written requests for redemption, it asserts that since none of those requests were paid prior to the bankruptcy filing, the defendants remain equity holders of the LLC. The Equity Committee joins SC II in this position.

The parties agree that the predicate provision of the Operating Agreement is Article 3.9, entitled "Optional Redemption", which states:

> 3.9. **Optional Redemption.** Members may redeem all or part of their Interests as of the close of business on the last business day of March, June, September or December of each year (or on another date as may be agreed to by the Manager, in its sole discretion); *provided, however,* that no Member may redeem any part of his, her or its Interest if such Member has been a Member for less than three hundred sixty-five (365) days, no redemption will be allowed if the Manger determines, in its reasonable discretion, that the redemption would have an adverse effect on the business of the Company, and no partial redemption may reduce (or further reduce) the Capital Account balance of such Member below the

lesser of $1 million or the amount of such Member's initial investment in the Fund, without the prior written consent of the Manager.  Any request for a redemption shall specify the dollar amount of Interests to be redeemed and must be made by written notice to the Manger given in accordance with Section 14.1 ["Notices"] at least 90 days prior to the date on which such redemption is to be effective (unless a shorter notice is agreed to by the Manager).  The redemption price shall be calculated based on the balance of the redeeming Member's Capital Account attributable to the Interest being redeemed, after such Capital Account has been adjusted pursuant to Section 4.1(b) ["Capital Accounts"] and after giving effect to the payment of the Management Fee and Performance Allocation due to the Manager through the date of such redemption pursuant to Section 5.6 ["Allocation of Expenses; Management Fee"] hereof, less any legal, accounting or administrative costs directly attributable to such redemption.  The redemption price will be paid to the redeeming Member promptly following the effective date of the redemption.  Until redeemed, a redeeming Member's Interest shall remain subject to the risks of the business of the Company.  No request for redemption may be withdrawn without the consent of the Manager, which may be given or withheld in its sole discretion.  Notwithstanding anything contained herein to the contrary, the Manger may in its sole discretion, waive any or all of the restrictions on redemption set forth herein, and modify the procedures for redemption, but shall not change the manner in which the redemption price is determined (except to change the date as of which the redeeming Member's Capital Account balance is determined for such purpose to the date of redemption and to give effect to a deemed payment of such fee pro rated to the date of redemption) and the restriction set forth in the next sentence.  Except as may be authorized in the Act and as the Manager may permit in its sole discretion, no redemption shall be made to the extent that, at the time of the redemption, after giving effect to the redemption, the liabilities of the Company exceed the fair value of the assets of the Company.

(Emphasis in original.)


The plaintiffs argue that the terms of the Operating Agreement are unambiguous;

therefore, there is no need for the admission of extrinsic evidence to interpret it, *i.e.*, the parol evidence rule bars the introduction of the proffered evidence.  Since there is no ambiguity in the Operating Agreement, the undefined terms of the contract, *i.e.*, "redeem". "redemption", "effective date of redemption" should be given their ordinary meanings.  The defendants argue that the parol evidence rule is inapplicable since the proffered evidence (1) is not being offered to alter or amend the Operating Agreement and (2) is not evidence of prior or contemporaneous contract negotiations.  Alternatively, the Defendants assert that if the parol evidence rule applies in some respect, the proffered evidence should be admitted nonetheless to aid the court in arriving at a proper interpretation of the terms of the Operating Agreement.  This is especially so, the defendants argue, given that the plaintiffs' offered interpretation of the Operating Agreement raises an ambiguity that warrants admission of the subject exhibits.

## DISCUSSION

To begin, the meaning of a contract is a question of law for the court's determination.  *See Phone-Poulenc*, 616 A.2d at 1195 (citing *Aetna Cas. And Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990)).  The parties agree that the court should apply the laws of Delaware in construing the Operating Agreement.

Parol evidence is not a rule of evidence; rather, it is a rule of substantive law founded on the substantive rights of the parties.  *See Taylor v. Jones*, 2002 WL 31926612, *3 (Del. Ch. Dec. 17, 2002); *see also generally* Hon. Barry Russell, Bankruptcy Evidence Manual §9:1 (2008-2009 ed.).

> In Delaware . . . the parol evidence rule bars the admission of oral evidence to contradict, vary, add to, subtract from, or otherwise modify the terms of a written contract.  When a written contract is clear, its language is conclusively presumed to correctly express the intent of the parties and, in the absence of fraud or mistake, no parol suggestions to the contrary will be countenanced.

*Aetna Ins. Co. v. Newton*, 274 F. Supp. 566 (D.C. Del. 1967) (internal citations omitted); *see also Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). And, "Delaware courts give clear and unambiguous contract language its ordinary and usual meaning." *Carrow v. Arnold*, 2006 WL 3289582, *6 (Del. Ch. Oct. 31, 2006) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

However, "when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms." *Eagle Indus.,* 702 A.2d at 1232. In *Eagle Industries*, the Delaware Supreme Court noted: "Contract language is not ambiguous simply because the parties disagree concerning its intended construction. *The true test is what a reasonable person in the position of the parties would have thought it meant.*" *Id.* at 1233, n.8 (citing *Rhone-Poulenc v. American Motorists Ins.*, 616 A.2d 1192, 1196 (Del. 1992)) (emphasis added); *see also Carrow v. Arnold*, 2006 WL 3289582, at *7 ("A contract is only ambiguous if its language is susceptible to two competing reasonable interpretations.") (citing *Lorillard Tobacco*, 903 A.2d at 739); *Worcester County Dev'l Co., Inc. v. Economos*, 2007 WL 2417338, *2 (Del. Com. Pl. Aug. 15, 2007) ("Ambiguity exists 'if the terms of the contract are inconsistent, or when there is a reasonable difference of opinion as to the meaning of words or phrases.'" (further citation omitted)). Importantly, "[a]mbiguities are construed against the drafter." *Economos*, 2007 WL 2417338, at *2 (citing *Twin City Fire Ins. Co. v. Del. Racing Assoc.*, 840 A.2d 624, 630 (Del. 2003)).

Here, the parties dispute what it means to be redeemed under the Operating Agreement. The plaintiffs acknowledge that the terms "redeem" and "redemption" are undefined terms both within the Operating Agreement and under the Delaware LLC Act.[2] Therefore, they argue that those words should be given their "ordinary" meaning.

---

[2] Where a Delaware LLC operating agreement is silent, one turns to the Delaware LLC Act for guidance. *See generally Walker v. Resource Dev'l Co. Ltd, LLC (DE)*, 791 A.2d 799 (Del. Ch. 2000) (stating that the Delaware LLC Act is "to furnish

Plaintiffs cite to dictionaries and definitions of the term "redeem". (*See* Plaintiffs' Memorandum of Law in Support of Its Objections to Defendants' Parol Evidence Exhibits at 3 n.16 (doc. #48 in Ad. Pro. No. 08-5097).) Several of the definitions cited by the plaintiffs in their memorandum invoke the concept of payment, especially in the context of stocks and bonds and other securities. (*See id.*)

However,

> [i]n some cases, determining whether a contract is susceptible to more than one interpretation requires an understanding of the context and business circumstances under which the language was negotiated; seemingly unequivocal language may become ambiguous when considered in conjunction with the context in which the negotiation and contracting occurred. Such extrinsic evidence may include overt statements and acts of the parties, the business context, prior dealings between the parties, and business custom and usage in the industry.

*Addy v. Piedmonte*, 20089 WL 707641, *9 (Del. Ch. Mar. 18, 2009).

Here it is important to consider both the context and business circumstances under which the language in question is used. The defendants were seeking to redeem membership interests in an LLC, which, in turn, has substantial investments in real estate and other ventures which are not readily liquid. *See generally Limited Liability Companies: Formation, Operation, and Conversion* 10 (Robert W. Wood ed.) (Panel Publishers, 2d ed. 2001)(discussing the use of LLC entities as a means of investing in less liquid assets). In this context, then, many of the "ordinary" definitions of "redeem" offered by the plaintiffs are not necessarily applicable. Indeed, looking at the most current edition of Black's Law Dictionary, the Ninth Edition (which is not cited by the plaintiffs), it is apparent that this is not the "usual" case of "redemption". The Black's definition of "redemption" states:

---

default provisions when the members' [operating agreement] is silent").

3. *Securities*. The reacquisition of a security by the issuer. • Redemption *usu. refers to* the repurchase of a bond before maturity, but it may also refer to the repurchase of stock and mutual-fund shares. – Also termed (in reference to stock) stock redemption; stock repurchase.

Black's Law Dictionary 1390 (9th ed. 2009) (emphasis added).[3] That definition does not discuss payment as do the definitions offered by the plaintiffs; rather, the operative word in that definition is "reacquisition". Thus, there is no universal definition of "redemption" which requires payment.

In light of those considerations, the court finds that a reasonable third person reading Article 3.9 of the Operating Agreement – the Optional Redemption provision which is not the exemplar of clarity – might be uncertain of the meaning of the terms "redeem" and "redemption". Those terms are susceptible to different interpretations; a reasonable third person could understand redemption to mean either that members of the LLC are redeemed on the effective date of redemption or are redeemed on the date upon which they are paid their redemption prices. Given that uncertainty, the court may consider the proffered evidence in order to arrive at a "proper interpretation" of the subject terms. *See*, *supra*, *Eagle Indus.,* 702 A.2d at 1232, 1233 ("In construing an ambiguous contractual provision, a court may consider evidence of prior agreements

---

[3] Black's complete definition of "redemption" is:

**redemption**, *n*. (16c) **1**. The act or an instance of reclaiming or regaining possession by paying a specific price. **2**. *Bankruptcy*. A debtor's right to repurchase property from a buyer who obtained the property at a forced sale initiated by a creditor. **3**. *Securities*. The reacquisition of a security by the issuer. • Redemption usu. refers to the repurchase of a bond before maturity, but it may also refer to the repurchase of stock and mutual-fund shares. – Also termed (in reference to stock) *stock redemption*; *stock repurchase*. **4**. *Property*. The payment of a default mortgage debt by a borrower who does not want to lose the property. — Also termed *dismortgage*.

Black's Law Dictionary 1390 (9th ed. 2009). That dictionary does not have a definition for "redeem".

and communications of the parties as well as trade usage or course of dealing"); *see also Hynansky v. Vietri*, 2003 WL 21976031, *2 n.14 (Del. Ch. Aug. 7, 2003) (finding parol evidence rule does not prohibit the use of evidence to clarify or to explain ambiguous terms).

## CONCLUSION

Accordingly, the defendants will be permitted to offer the identified exhibits for whatever, if any, probative value weight any of them may be given. Accordingly, IT IS HEREBY ORDERED that the plaintiffs' parol evidence objection is OVERRULED.

IT IS FURTHER ORDERED that a ruling on the plaintiffs' hearsay and relevance objections is deferred until trial. *See, e.g., United States v. Ferguson*, No. 3:06CR137 (CFD), 2007 WL 4556625, at *4 (D. Conn. Dec. 20, 2007) (reserving decision on the admissibility of exhibits until trial when the context within which exhibits may be offered becomes clear).

IT IS SO ORDERED this 18th day of August 2009 at Bridgeport, Connecticut.

Alan H. W. Shiff
United States Bankruptcy Judge